Anna C. Forsberg, Plaintiff-Appellee, v. Kenneth E. Harris, Defendant-Appellant.

Gen. No. 47,925.

First District, Third Division.

September 14, 1960.

161

John H. Watson, Jr., Allan N. Lasky, and Albert W. Alsterda, of Chicago, for appellant.

Pantner, Nelson, Rothstein, and Albert, of Chicago (Harry G. Fins, of counsel) for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This is an appeal taken from an order of the Circuit Court of Cook County striking and dismissing defendant's petition to vacate an order which had been entered within thirty days by another judge of the same court and which denied defendant's motion to quash a capias ad satisfaciendum and void the return of service, in a suit which had been brought against him and on which judgment had been entered.

From the record before us it appears that on September 16, 1951 the plaintiff was struck by an automobile owned and driven by the defendant. On October 17, 1951 the plaintiff filed a suit and obtained service upon the defendant by serving the Secretary of State of Illinois in accordance with section 20a of the Illinois Motor Vehicle Act (Ill. Rev. Stat. 1951, ch. 95½, par. 23). The attorney for the plaintiff filed an affidavit of compliance with the Clerk of the Circuit Court. The defendant was defaulted for failure to file an appearance. The case was heard as a default matter on March 28, 1952. The court found the defendant guilty and assessed plaintiff's damages in the sum of $10,000. The court also found that the defendant was guilty of wilful and wanton misconduct and made an express finding that malice was the gist of the action. On November 3, 1958 the defendant was taken in custody on a body execution dated October 30, 1958.

163

On November 3, 1958 defendant's attorney appeared before Judge Harry M. Fisher. On the same day Judge Fisher entered an order which, after reciting that a motion had been made by the attorney for the defendant to quash the capias and to find the substituted service in the case void, overruled said motion and ordered that the defendant be released from the custody of the Sheriff upon the filing of his own recognizance with his employer as security, and it was further ordered that the defendant appear pursuant to the requirements of the bond on December 3, 1958 and from day to day thereafter until discharged by the order of the court. On the same day a bond was executed and filed with the Clerk of the Circuit Court.

On November 25, 1958 the defendant filed a verified petition to vacate Judge Fisher's order. At that time Judge Fisher was dead. The plaintiff filed a motion to strike and dismiss the petition, setting up that the petition was insufficient in law, that after the expiration of five years from the entry of the judgment the court lacked jurisdiction to set aside the judgment of March 28, 1952, and that the decision rendered on November 3, 1958 was res judicata. The trial court heard arguments of counsel and on February 11, 1959, after stating that his order was that "the motion of the defendant will be overruled and denied," signed an order presented by the plaintiff sustaining the plaintiff's motion to strike and dismiss the petition, from which order this appeal is taken. The appeal was originally taken directly to the Supreme Court, and on motion by the plaintiff was transferred here.

In this court the defendant contends that the judgment for the plaintiff is void because at the time of the accident and at the time the complaint against him was filed he was a resident of Illinois, and hence at-

tempted service through the Secretary of State was ineffective. He further contends that the capias issued for his arrest was void because the plaintiff did not in her complaint pray that a capias issue and did not allege that malice was the gist of the action. The defendant prays that the judgment rendered against him on March 28, 1952 be declared null and void, that the order of February 11, 1959 be reversed and set aside or that the court declare null and void that portion of the judgment of March 28, 1952 finding that malice was the gist of the action and authorizing the issuance of a capias, and that the trial court's order refusing to quash the capias should be set aside.

The plaintiff's theory is that the order of November 3, 1958 is res judicata as to the issues involved therein since no appeal was taken therefrom, that the defendant's petition to vacate the judgment having been filed more than five years after the entry of the judgment, it was properly denied in accordance with the statute, that the record shows that the complaint charged the defendant with "malicious" conduct, that the court made a special finding that "malice is the gist of the action," that the judgment recited that "malice is the gist of the action," and that therefore a body execution was properly issued.

The first question to be disposed of is as to whether or not the service made on the defendant under the provisions of the statute conferred jurisdiction on the court.

■ The order entered by Judge Fisher on November 3, 1958, since it provided for a further appearance of the defendant, was not a final and appealable order. The notice of appeal indicates that the appeal is being taken from the order of the court entered on February 11, 1959 striking and dismissing the defendant's petition to vacate the order of November 3,

1958. On this appeal we have before us both orders. Biagi v. O'Connor, 18 Ill.2d 238, 163 N.E.2d 461; Biagi v. Gregory, 19 Ill.App.2d 534, 154 N.E.2d 849.

Paragraph 23 of chapter 95½ of the Illinois Revised Statutes, 1951, provided that service may be made upon the Secretary of State where a person is a nonresident of the State or where at the time the cause of action arose he was a resident of the State but subsequently became a nonresident.

It appears from the record that the defendant was a resident of Chicago, Illinois from 1924 to June, 1947; that he obtained employment in Baltimore, Maryland in 1947 and resided there until June, 1951, at which time he sold his furniture and household effects and shipped certain trunks and a tool case to an address in Chicago; that the defendant shortly thereafter drove his automobile to Chicago with his wife and child. In July, 1951 the defendant rented an apartment at 921 Eastwood Avenue, in Chicago, where he resided until September 25, 1951. On that date, nine days after the accident, the defendant moved out of the apartment and, with his wife and child, drove to the State of New York. He returned to Chicago on October 24, 1951, seven days after the suit was filed. He rented an apartment at 4278 North Hazel Avenue, in Chicago, and has resided there until the time that he was arrested under the capias. In the interim between the date of the accident and the time when the defendant went to New York he was contacted by an investigator employed by the attorney for the plaintiff. The defendant referred the investigator to his attorney.

It is the contention of the plaintiff that at the time of the accident or at the time the suit was started the defendant was a nonresident of the State of Illinois and hence the substituted service was valid.

166

■ The attorney for the defendant contends that on November 3, 1958, after the plaintiff had been arrested under the capias, he appeared before Judge Fisher solely to have the defendant released on bond in order to permit him to study the facts and law involved in the case, and that he did not make any motion to either quash the capias or find the substituted service in the case void. However, this court is bound by the recital in the order of Judge Fisher that such motions were made, and in the petition to vacate that order it is stated that the attorneys for the plaintiff and the defendant appeared, together with the defendant, and that the judge then inspected the Clerk's register and, after swearing in the defendant, the court took evidence from the defendant regarding his residence and thereupon entered the order. It is true, as contended by the defendant, that the motion of the plaintiff to strike defendant's petition to vacate the order admits all facts well pleaded therein, but such a motion does not admit conclusions alleged in the pleading. Schreiner v. City of Chicago, 406 Ill. 75, 92 N.E.2d 133; Wolcott v. Village of Lombard, 387 Ill. 621, 57 N.E.2d 351; 30 I. L. P. Pleading, sec. 188.

The statute in question deals with persons who are nonresidents of the State. No cases have been cited to the court where the term as used in the statute is defined. However, the Attorney General in 1952, in an opinion (No. 352), stated that where a statute such as the one here involved does not define the term "residence" then the term is to be given its general, customary and usual meaning, citing Husser v. Fouth, 386 Ill. 188, 53 N.E.2d 949, and Stiska v. City of Chicago, 405 Ill. 374, 90 N.E.2d 742. The opinion further states that the residence of a person depends upon his actions and intention, and that the intention is not necessarily determined from the statements or declara-

tions of the party but may be inferred from his acts, objective facts and the surrounding circumstances, citing Wells v. Parrott, 43 Ill. App. 656; Holt v. Hendee, 248 Ill. 288, 93 N. E. 749; and Routt v. Barrett, 396 Ill. 322, 71 N.E.2d 660.

██ ██ The defendant in his petition to vacate admits that at the time of the hearing on November 3, 1958 the court took evidence from the defendant concerning his residence and thereupon the court entered its order overruling the motion of the defendant to find that the substituted service in the case was void. There is no report of the proceedings before the court in the record. There is nothing in the defendant's petition to indicate that the court was in error in its ruling. Under such circumstances the presumption is that the evidence heard by the court was sufficient to enable the court to determine that the actions and intention of the defendant made him a nonresident either at the date of the accident or the date when suit was commenced, or on both dates. Pease v. Kendall, 391 Ill. 193, 63 N.E.2d 2; Sauter v. Pickrum, 373 Ill. 541, 26 N.E.2d 844; City of Chicago v. Franks, 15 Ill.App.2d 189, 145 N.E.2d 806. Furthermore, it is well established law that where an attempt is made to attack the jurisdiction of the court over the person of the defendant, such a motion must be made by the defendant appearing specially for that purpose alone. In Lord v. Hubert, 12 Ill.2d 83, 145 N.E.2d 77, the court says:

"... a person cannot, by his voluntary action, invite the court to exercise its jurisdiction and at the same time deny that jurisdiction exists. The sole object of process is to notify the defendant of pending litigation so as to secure his appearance, and though not named as a party in the original action, a person may subsequently appear even after judgment and become bound by the

foregoing proceedings as if initially served. . . . [Citing cases.] Although the court participation may come in many forms, suffice to say that any action taken by the litigant which recognizes the case as in court will amount to a general appearance unless such action was for the sole purpose of objecting to the jurisdiction. . . . [Citing cases.]"

■ In the instant case the defendant joined with his motion attacking the jurisdiction of the court over his person a motion to quash the capias. Making the latter motion constituted a general appearance on his part, as by the motion he recognized that the case was properly in the court. The defendant also in his petition to vacate the order of November 3rd again makes an attack on the jurisdiction of the court, but also prays that the default order of March 14, 1952 should be vacated and that the capias should be quashed. This, too, would constitute a general appearance. For all of the foregoing reasons the order of the trial court holding that it had jurisdiction over the person of the defendant was an order binding upon the defendant and was not in error.

The defendant's motion to vacate the order of the trial court refusing to quash the capias presents a more difficult question.

■ Originally, under the law relating to capias ad satisfaciendum a defendant could not either under statute or at common law by giving bail be released temporarily when he was in custody under valid final process in a civil case, and could only be released by virtue of the Act concerning insolvents. Matson v. Swanson, 131 Ill. 255, 23 N. E. 595. The amendments of 1955 and 1957 to the Act (chap. 77, par. 68) provided that the debtor should when arrested under a capias be taken immediately before the court which should proceed in a summary manner to hear the evi-

169

dence as to whether the execution against his body was properly issued, and further provided that the court may continue such hearings from time to time and permit the defendant to give bond for his appearance.

██ In the instant case the trial court apparently followed the procedure prescribed in the Act. Again we are confronted with the rule previously referred to that since the court entered an order refusing to quash the capias it must be presumed that the court had sufficient evidence to satisfy it as to the correctness of its ruling, and consequently such order of the court would ordinarily be binding upon the defendant. To this rule there is an exception, and that is that where the court originally lacked the power to make a finding that malice was the gist of the action and hence authorize the issuance of a capias ad satisfaciendum, that portion of the judgment of the court may be attacked collaterally in any court and at any time. Kryl v. Zelezny, 290 Ill. App. 599, 8 N.E.2d 223; Armstrong v. Obucino, 300 Ill. 140, 133 N. E. 58. In Tuttle v. Wilson, 24 Ill. 553, which was an action in debt against a sheriff for an escape of a defendant arrested under a capias ad satisfaciendum, the court holds that the capias was void inasmuch as it was issued upon a defective affidavit, and Mr. Justice Breese, speaking for the court, says:

"The right to personal liberty is one of the most valuable and most cherished rights appertaining to man in society, and one of which he cannot be deprived except by the judgment of his peers, or by the law of the land. In the barbaric age of the law in this country, the unfortunate debtor could be deprived of this inestimable right if he failed to pay an honest debt. His creditor could keep him in arcta custodia for the misfortune of being poor."

170

Section 5 of the Judgments Act (chap. 77, par. 5) was amended in 1935 by adding a provision that no body execution shall issue unless the judgment shows that it was obtained for a tort committed by the defendant and that there be a special finding by the court or the jury, as the case may be, that malice was the gist of the action. In Ingalls v. Raklios, 373 Ill. 404, 26 N.E.2d 468, that amendment to the statute was construed, and the court held therein that if a defendant against whom a writ was issued desires to challenge the sufficiency of the judgment as regards the question of the finding of malice his remedy is to apply to the court entering the judgment to quash the writ.

 Where the court violates a statutory provision prohibiting it from doing a particular act, such judgment may be attacked collaterally. In Armstrong v. Obucino, supra, the court says:

> "The statement has very frequently been made that where a court has jurisdiction of the parties and the subject matter, its decree, however erroneous, can only be attacked on appeal or error; but the rule is subject to an exception equally well settled,—that a decree may be void because the court has exceeded its jurisdiction. . . . The doctrine that where a court has once acquired jurisdiction it has a right to decide every question which arises in the cause, and its judgment or decree, however erroneous, cannot be collaterally assailed, is only correct when the court proceeds according to the established modes governing the class to which the case belongs and does not transcend in the extent and character of its judgment or decree the law or statute which is applicable to it. . . . [Citing cases.]
>
> "One of the essentials of a valid judgment is that the court have jurisdiction to render that particular judgment. . . ."

171

See Barnard v. Michael, 392 Ill. 130, 63 N.E.2d 858; McInness v. Oscar F. Wilson Printing Co., 258 Ill. App. 161; and Collins v. Collins, 14 Ill.2d 178, 151 N.E.2d 813. Nor does the fact that the court has found that it has jurisdiction add anything to its authority, since where the court has exceeded its power to act in the particular cause before it, its finding that it had the power so to act adds nothing to its authority since such finding itself is devoid of authority. People v. Brewer, 328 Ill. 472, 160 N. E. 76. In Kryl v. Zelezny, supra, a collateral attack was made upon a default judgment which included a special finding that "malice is the gist of this action." In that case the court construed section 34 of the Practice Act, which was set out in the opinion as follows:

> " 'Prayer for Relief. Every complaint and counterclaim shall contain specific prayers for the relief to which the pleader deems himself entitled. Such relief, whether based on one or more counts, may be asked in the alternative. Demand for relief which the allegations of the pleadings do not sustain may be objected to on motion or in the answering pleading. *Except in cases of default,* the prayer for relief shall not be deemed to limit the relief obtainable, but where other relief is sought the court shall by proper orders, and upon such terms as may be just, protect the adverse party against prejudice by reason of surprise.' (Italics ours.)"

The court points out that the obvious purpose of a specific prayer for relief in every complaint is to apprise the defendant of the nature of the plaintiff's claim and the extent of the damages sought so that the defendant may prepare to meet the demand or permit a default

172

to be taken if he recognizes its validity and does not desire to contest the claim. The court quotes from the discussion of the section in the Illinois Bar Association's Illinois Practice Act Annotated, where it is said that the general prayer of the equity bill is no longer sanctioned and that where the defendant defaults the complainant can have no relief more favorable than that demanded. (The default referred to in the Practice Act is default for failure to appear.) The court says further: "In cases of default, under the plain terms of the statute, a specific prayer for relief is required in the complaint which 'directs attention to what is wanted,' and it is only just and equitable that a defendant who, having been apprised definitely of what the specific demand against him is, permits himself to be defaulted, should not be subject to a judgment 'more favorable than that demanded' or in excess of the amount of the damages claimed in the complaint." The court holds that in view of the fact that there was nothing in the language of the complaint by way of specific prayer for relief or otherwise to indicate or suggest that a special finding that malice was the gist of the action would be sought, the court was without jurisdiction to enter such a finding, and the court affirmed the judgment of the Circuit Court except as to that portion of the judgment order specially finding that malice is the gist of the action.

In Dunwoody & Co. v. Washington, 315 Ill. App. 54, 42 N.E.2d 113, where the appeal was taken from a judgment of the Municipal Court of Chicago, the court cites with approval Kryl v. Zelezny, supra, and uses the same omission as one of the grounds for reversing the judgment in part. The opinion of the court in that case is based squarely on the Kryl case and does not refer to any Municipal Court rule as differing from the provisions of the Practice Act.

173

The plaintiff argues that the Kryl case is not applicable since in the case at bar it is apparent from the record that the plaintiff in one count of her complaint alleges wilful, wanton and malicious conduct of the defendant and that therefore there is sufficient in the complaint to permit a finding by the court that malice is the gist of the action and the issuance of a capias upon such finding. In Peiffer v. French, 376 Ill. 376, 33 N.E.2d 591, the court, following the rule laid down in Ingalls v. Raklios, supra, that the judgment must contain a finding that malice is the gist of the action and that that finding must appear on the face of the judgment, says:

> "We pointed out in the Raklios case, supra, that a defendant might even be actuated by malice in the commission of the tort, and yet that malice not be the gist of the action. The same is true of recklessness or other misconduct. Laws in derogation of the liberty of a citizen must be strictly construed, and to justify any imprisonment for tort, which is contrary to the general tendency of our times, statutory requirements must be meticulously observed. In this case, the statutory requirement was not complied with and no writ of capias ad satisfaciendum should have been issued."

 The allegations in the complaint in the case before us were not sufficient to apprise the defendant that a finding would be entered by the court that malice was the gist of the action and that a capias would issue thereupon. Under the rule laid down in the Kryl case that portion of the court's finding in the judgment was erroneous, and subject to collateral attack.

 The defendant urges that the plaintiff at the time of the original hearing of the case had no right to waive her jury demand after default without giving

174

notice to the defendant. Under section 64 of the Illinois Civil Practice Act as then in force the defendant was not entitled to any notice. Harris v. Juenger, 289 Ill. App. 467, 7 N.E.2d 376; Anzalone v. Johnson, 345 Ill. App. 410, 103 N.E.2d 383; Westmoreland v. West, 19 Ill.App.2d 161, 153 N.E.2d 275.

The defendant's petition was filed some six and one-half years after the judgment of March 28, 1952. The plaintiff argues that paragraph 23 of chapter 95½ (Ill. Rev. Stat. 1951), under which substituted service was had, bars any attack upon the judgment after the expiration of five years. The statute (now paragraph 9–301 of chapter 95½) provides in substance that when a final judgment is entered against any non-resident defendant who shall not have received notice of service and a copy of process as provided in the statute, such defendant shall within a year after notice in writing is given to him of the judgment, or within five years after the judgment if no notice has been given him, appear in court and petition to be heard concerning the matter of the judgment, and upon the payment of costs the person so petitioning may appear and answer the plaintiff's allegations and thereafter such proceedings shall be had as if the defendant had appeared in due season and no judgment had been rendered. It further provides that if the court finds that the judgment ought not to have been made against the defendant it may be set aside, otherwise it should be ordered to stand confirmed, and states: "The judgment shall, after 5 years from the making thereof, if not set aside in the manner aforesaid, be deemed and adjudged confirmed against such defendant . . . ."

 The plaintiff argues that under the provisions of the statute no attack could be made upon the judgment after five years. We do not so construe the statute. The statute provides that within either one or five years, as the case may be, a nonresident against

whom a default judgment has been entered may come into court and, having paid costs, have the judgment opened up, file what pleadings he deems necessary and have a trial upon the issues, and thereupon the judgment originally entered may be set aside or confirmed. The fact that the statute extends this privilege to nonresidents who have not received the requisite notices in no way affects the rule which applies to the duty of a court to vacate any judgment where the court lacked either jurisdiction of the subject matter or of the parties, or had no right in law to enter the judgment complained of. In Rompza v. Lucas, 337 Ill. App. 106, 85 N.E.2d 467, the defendant, a nonresident, attacked collaterally a default judgment entered against him under a purported service upon the Secretary of State. It was objected that the attack could not be made after thirty days after the judgment was entered. The court says: "A judgment entered by a court which lacks jurisdiction of the parties is void and may be attacked at any time, in any court, either directly or collaterally. . . . [Citing cases.]" To construe this section of the statute otherwise might raise some question as to its constitutionality. In Jones v. Pebler, 371 Ill. 309, 20 N.E.2d 592, a case in which the court held this section of the statute constitutional, the court says: "If the language employed admits of two constructions, one of which makes the enactment absurd, if not mischievous, while the other renders it reasonable and wholesome, the construction which leads to an absurd result should be avoided."

In the case before us the questions as to whether the court had obtained jurisdiction of the person of the defendant and whether the court had the right to make a finding that malice was the gist of the action were both properly before the trial court at the time the order of November 3, 1958 was entered.

The defendant's petition to vacate the order of November 3, 1958 prayed that that order be vacated as to the refusal both to void the service and to quash the capias ad satisfaciendum. The order of the Circuit Court entered on February 11, 1959 improperly dismissed that portion of the petition seeking a vacation of the order refusing to quash the capias. The entire matter with reference to the right of the court to enter orders with regard to the capias is apparent on the face of the record and no good purpose would be served by remanding the case to the trial court with directions to enter appropriate orders. We reverse that portion of the order of the Circuit Court entered on February 11, 1959 striking and dismissing defendant's petition with reference to a vacation of that portion of the order of November 3, 1958 which denies the quashing of the capias ad satisfaciendum. That portion of the order of November 3, 1958 which overruled the motion of the defendant to quash the capias is vacated, the capias is quashed, and we reverse that portion of the judgment entered on March 28, 1952 finding that malice is the gist of the action. In all other respects the orders and judgment of the Circuit Court are affirmed.

Affirmed in part; reversed in part.

SCHWARTZ, P. J. and DEMPSEY, J., concur.